```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
------------------------------------------X     ELECTRONICALLY FILED
                                          :    DOC #: _____
                                          :    DATE FILED: September 1, 2017
                                          :
IN RE: 650 FIFTH AVENUE AND               :
RELATED PROPERTIES                        :    08 Civ. 10934 (KBF)
                                          :    and all member and
                                          :       related cases
                                          :
------------------------------------------X    OPINION & ORDER


------------------------------------------ X
                                          :    09-cv-165 (KBF)
KIRSCHENBAUM, et al.,                     :    09-cv-166 (KBF)
                                          :    09-cv-553 (KBF)
                         Plaintiffs,      :    09-cv-564 (KBF)
                                          :    10-cv-1627 (KBF)
                                          :    10-cv-2464 (KBF)
                                          :    11-cv-3761 (KBF)
               -v-                        :    12-mc-19 (KBF)
                                          :    12-mc-20 (KBF)
650 FIFTH AVENUE and RELATED              :    12-mc-21 (KBF)
PROPERTIES,                               :    12-mc-22 (KBF)
                                          :    13-mc-71 (KBF)
                         Defendants.      :    13-cv-1825 (KBF)
                                          :    13-cv-1848 (KBF)
                                          :
------------------------------------------X    OPINION & ORDER
```

KATHERINE B. FORREST, District Judge:

  Beginning on May 30, 2017, and continuing through June 29, 2017, a jury trial was held in the above-captioned forfeiture action, Case No. 08-cv-10945 (the "Forfeiture Action"). On June 29, 2017, the unanimous jury returned a verdict in favor of the Government requiring forfeiture of a number of properties.

  Beginning on May 30, 2017, and continuing through June 28, 2017, a bench trial was also held in a number of above-captioned private turnover actions (the

"TRIA/FSIA Action" or "Turnover Action")  On June 29, 2017, the Court issued an Opinion & Order finding that the Judgment Creditors have proven entitlement to attach and execute upon the same properties as well as additional properties under both § 201(a) of the Terrorism Risk Insurance Act and § 1610(b)(3) of the Foreign Sovereign Immunities Act.  (ECF No. 1895.)

Before Judgment can be entered in either action, however, the Court must resolve a number of post-trial motions[1]:

Motion 1: A motion by the Government to dismiss claims by the Levin Judgement Creditors, the Texas Islamic Education Center ("IEC"), and the Maryland IEC (see ECF Nos. 1988, 2001, 2012, 2015, 2023, 2034, 2038)[2];

Motion 2: The Alavi Foundation and the 650 Fifth Avenue Company's ("Claimants") motion pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure for judgment as a matter of law or a new trial with respect to the Forfeiture Action (see ECF Nos. 1999, 2018, 2033);

Motion 3: A motion by Claimants to reduce the amount awarded by the jury in the Forfeiture Action as contrary to the 8th Amendment (see ECF No. 1998, 2017);

---

[1] Additional motions have been filed that are not addressed in this Opinion & Order.  Among those are applications by certain judgment creditors, the Levins; the Levins are not parties in the above-captioned consolidated and coordinated proceedings and the Court addresses their applications separately.  In addition, there are a number of motions dealing with issues of priority of judgment that the Court also addresses separately.

[2] On August 18, 2017, Amir Reza Oveissi voluntarily withdrew his previously filed notice of claim. (ECF No. 2029.)

Motion 4: A motion by Claimants to dismiss the Forfeiture Action on the basis of a lack of subject matter jurisdiction (see ECF No. 1992, 2021, 2032); and

Motion 5: A motion by Alavi and the 650 Fifth Avenue Company for stays pending appeal of judgment in both the Forfeiture Action and the Turnover Action (see ECF No. 1989, 2022, 2036).

The Court addresses each of these motions in turn.

A.  Motion 1: The Government's Motion to Dismiss

The Government has moved to dismiss three outstanding claims[3] with respect to certain of the properties at issue in the Forfeiture Action.

1.  The Levins's claim

The first claim addressed in the Government's motion is that brought by the "Levin Judgment Creditors" on February 4, 2015, purporting to make a "Claim to any Distribution of Forfeited Properties in Lieu of Notice of Claim under Rule G." (ECF No. 1271 at 1.) In their claim, the Levins assert an interest in the building located at 650 Fifth Avenue (the "Building") and certain other real property owned by Alavi and located in Queens, New York. The Government is correct that the claim should be dismissed.

As an initial matter, the claim does not even purport to be a valid claim under the Civil Asset Forfeiture Reform Act ("CAFRA") or Rule G of the

---

[3] The motion was initially made as to four claims but one of the entities at issue, Amir Reza Oveissi, has withdrawn his claim (ECF No. 2029), thereby mooting that portion of the Government's motion.

3

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G").

In addition, the Levins's claim is untimely. Once a forfeiture action has been commenced—as it was here in November 12, 2009—rule G(5) sets deadlines by which potential claimants must come forward. These requirements "force claimants to come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay, and to minimize the danger of false claims by requiring claims to be verified or solemnly affirmed." United States v. $8,221,877.16 in United States Currency, 330 F.3d 141, 150 n.9 (3d Cir. 2003) (internal quotations omitted). Rule G(8) provides for dismissal (or, in Rule G parlance, "striking") of a claim that has failed to comply with filing requirements.

The Government duly published notice that it had filed its claim on an Internet site commencing December 1, 2009, and running for 30 consecutive days. Accordingly, the Levins's claim had to be filed not later than January 31, 2010—60 days from first publication. It was not. The Levins obtained their judgment against Iran in 2007—but failed to file a claim until 2015. By this time, all of the parties in the consolidated and coordinated cases had spent enormous amounts of time in discovery, district court motion practice, and in connection with certain appeals. Throughout this time the Levins remained on the sidelines.

Third, even if the Levins's claim was timely, they lack standing under Rule G(8). Statutory standing here requires that a claimant have an interest in the

4

defendant property. The Levins do not. The Levins are, at most, general creditors. The law is clear that a general, unsecured creditor without a lien lacks any specific interest in defendant property and thus lacks standing to contest its forfeiture. 18 U.S.C. § 983(d)(6)(B)(i); DSI Assocs. LLC v. United States, 496 F.3d 175, 184 (2d Cir. 2007).

For these reasons, the Court dismisses the Levins' claim in the Forfeiture Action.

### 2. The Texas IEC claim

The Government has also moved to dismiss the claim asserted by the Texas IEC. On February 16, 2010, the Texas IEC, claiming a leasehold interest in the defendant property located in Texas, filed a "Verified Claims and Statement of Interest." (ECF No. 63.) On its face, that claim concedes that it does not challenge Alavi's interest in the property. The Forfeiture Action was directed at any interest that Alavi had in the property—an interest, therefore, which the Texas IEC claim did not address. On June 29, 2017, the jury awarded the Government a 15% interest in Alavi's interest in the Texas property. The forfeited interest may therefore be fulfilled without impingement on any valid leasehold interest.[4] The Texas IEC claim is therefore dismissed as moot.

### 3. The Maryland IEC claim

The third and final remaining claim that the Government seeks to dismiss from the Forfeiture Action is asserted by the Maryland IEC. That entity filed a

---

[4] This Court need not, and does not, reach the validity of any leasehold interest.

5

claim on December 16, 2009. (ECF No. 53.) In particular, the Maryland IEC asserts that it has a possessory interest in the properties located at 7917 Montrose Road, Potomac, Maryland, and 8100 Jeb Stuart Road, Potomac, Maryland, based on its status as tenant and/or occupant. On June 29, 2017, the jury awarded the Government a 17% interest in these two properties. As with the Texas IEC claim, the Government has disclaimed any intent to forfeit the leasehold interest. The Maryland IEC claim is therefore dismissed as moot.[5]

The Government's motion to dismiss is GRANTED in its entirety.

B.  Motion 2:  Claimants' Motion for JNOV or a New Trial

Claimants seek to have the jury verdict with regard to the defendant real properties thrown out on three bases: (1) that the only proceeds that the Government could have shown resulted from IEEPA violations were Alavi's management fees, (2) that there was insufficient evidence from which the jury could find that the interest in the 650 Fifth Avenue Company (the "Partnership Interest") was retained as a result of IEEPA violations, and (3) that there was insufficient evidence from which the jury could find that the defendant properties were

---

[5] In 2013, the Maryland IEC sought to add other bases for a claimed interest. Such additional bases were not timely filed. To allow such additional claims would be to allow subversion of the Rule G filing requirements. In addition, to the extent that such additional bases include a theory of constructive trust, the Maryland IEC lacks standing: it lacks any ownership interest necessary to support a determination on such a claim in its favor. Moreover, the Maryland IEC has failed to assert sufficient facts supportive of the elements of a claim for constructive trust under Maryland law—fraud, misrepresentation, or other improper methods or other reasons why the Alavi interest would not be valid. To the contrary, the Maryland has supported Alavi's continued interest in the properties at issue. To the extent the Maryland IEC has asserted Sharia law in support of its claims, such principles are inapplicable in this forum.

"involved in" money laundering. All bases are without merit and the motion is DENIED.

1. Proceeds not limited to management fees

Claimants' assert that the only proceeds traceable to IEEPA violations were management fees—thus precluding any award of a Partnership Interest that exceeded such fees. This is incorrect. The legal definition of "proceeds" is broad, United States v. Seabrook, 661 Fed. App'x 84, 86 (2d Cir. 2016), and allows for a "but for" test in determining what constitute proceeds, United States v. Grant, 2008 WL 4376365, at *2 n.1 (S.D.N.Y. Sept. 25, 2008) (No. S4-05-Cr-1192); see also United States v. Nicolo, 597 F. Supp. 2d 342, 350 (W.D.N.Y. 2009). There was more than sufficient evidence in the record before the jury to support its determination that in this case, "proceeds" of the IEEPA violations exceeded simply management fees.

Here, the IEEPA violations enabled Alavi to operate the Building for the Government of Iran; it allowed Alavi to conceal the ownership of the Government of Iran and prevent turnover in aid of execution on valid judgments due and owing by the Government of Iran and registered in this district. All of the entities and personnel that were required to manage and operate the Building were hired by Alavi—and functioned entirely as Alavi's agents. On the overall factual record, a limitation of any award to "management fees" was certainly not required.[6]

---

[6] Claimants' argue that even if the net income from the Building were proceeds, the Government failed to prove that post-1995 expenditures on Alavi's properties and into its bank accounts were derived from the Building's net income versus some other source. Claimants made this argument to

7

2. The Partnership Interest was "retained"

The law provides that property "retained" as a result of a criminal offense is subject to forfeiture. 18 U.S.C. § 981; United States v. Torres, 703 F.3d 194, 200 (2d Cir. 2012). The avoidance of loss by way of a criminal offense can result in "retained" property subject to forfeiture. Torres, 703 F.3d at 199. Here, the evidence at trial amply supported that the services that Alavi provided in violation of IEEPA allowed and enabled the concealment of Iran's interest in the Partnership and the Building, as well as its ownership of Assa, allowing retention of the Partnership Interest. Alavi's participation in the Partnership was a primary way in which long-term and multi-layered concealment was accomplished. There was substantial evidence at trial that Alavi viewed the revelation of the truth of the relationships with Iran as catastrophic—"sure death," as stated in the notes of a board member. In addition, Alavi defended against various lawsuits by concealing Iran's true interest in the Building, and its overall control. Had Alavi revealed the truth, all of its assets would have been turned over to satisfy various judgments far in excess of their value long ago.

3. The Building and Partnership Interest were involved in money laundering

The final argument that Claimants assert in support of their motion is that the evidence failed to support that the Partnership Interest and Building were

---

the jury, and the jury acted well within its discretion in rejecting it based on the factual record. There was testimony that donations were de minimis; and that prior to 1995, Alavi had serious financial difficulties and operated in the red. Tax records further corroborate Alavi's financial position.

8

involved in money laundering. This argument is without merit. There is no doubt that substantial evidence supports that both of these assets were primary means through which proceeds, traceable to IEEPA violations, were concealed and laundered. Moreover, such proceeds were again, not limited to management fees. Here, the income from the Building was used to sustain its operations and for improvements—in short, it was laundered. In addition, management of the Building was part and parcel of the IEEPA violation, and concealment of the violation; payments were made to Alavi and its employees (via allocation) for work in connection with such operations constituted money laundering transactions. Thus, the record fully supports that management fees paid to Alavi and derived from its Partnership Interest were used to conduct money laundering transactions. The Partnership Interest was there involved in a money laundering transaction and is thus subject to forfeiture.

Accordingly, Claimants' motion is DENIED.

C. Motion 3: Claimants' Motion to Reduce Award

Claimants ask this Court to reduce the jury award on the basis that it is grossly disproportionate to the offense and therefore in violation of the 8th Amendment. This argument is without merit and the motion is DENIED.

Here, the forfeiture of the Partnership Interest first and foremost targets the proceeds of a crime. The property is therefore "guilty property" and the 8th Amendment's prohibition on excessive fines does not apply. United States v. Sum of

9

$185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967, 731 F.3d 189, 194 (2d Cir. 2013).

As to the Building—which was involved in money laundering and is therefore subject to a proportionality analysis—the record amply supports the jury award as it stands. The record evidence leaves no doubt that the offense at issue was an extremely serious one involving national security, and one that was carried out in a brazen manner for years and years.[7] Similarly, the money laundering that occurred was based on the IEEPA violations, and was an attempt to end-run a sanctions regime.

In addition, the evidence amply demonstrated that the conduct at issue in this trial was the product of planned, carefully executed judgment: Claimants were aware of Iranian interest, ownership and control, and they proceeded to conduct themselves in a way designed to maximize protections for Iran, in the face of clear and well-understood laws that made those actions unlawful. IEEPA was meant to prevent precisely what occurred here. In sum, the seriousness of the offense, the nexus between the offense and the award and the level of culpability all support the award as it stands.

The fact that the jury award threatens Alavi's "existence" does not lead to a conclusion that there is a violation of the 8th Amendment. Alavi may, to the extent

---

[7] The Court's curative instructions to the jury do not require a finding otherwise. As the Government correctly notes in opposition to this motion, such instructions are not intended to, and cannot, alter the underlying statutory purpose.

10

it is able to otherwise act within the law, continue its charitable works. It will not, however, have access to the assets that the jury has awarded.

This motions is therefore DENIED.

### D. Motion 4: Claimants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Claimants assert that the Court lacks subject matter jurisdiction over the Forfeiture Action based on its decision—issued immediately following the jury verdict—that the same property is subject to turnover on the basis of the Foreign Sovereign Immunities Act ("FSIA"). This is a frivolous argument. First, the as the record makes clear, and as was intentional, this Court's decision on the FSIA claims followed the jury verdict in the Forfeiture Action. The Court has not entered judgment in either action. It intends to enter judgment simultaneously. This eliminates this argument out of the gate. As a result of this, as a technical matter alone, there was never a moment when the Forfeiture Action was being litigated when judgment had been entered finding that the property was that of a foreign sovereign. It is an odd argument since Claimants contest that they "are" a foreign sovereign.

In addition, this argument is one that has plainly been waived. The Forfeiture Action has long been coordinated with the FSIA and TRIA actions—they were litigated together literally for years. And, for years, Claimants never asserted that the Court lacked subject matter jurisdiction in the Forfeiture Action—for the obvious reason that they have always maintained that they are not a foreign sovereign.

But in all events, subject matter jurisdiction in the Forfeiture Action is conferred by §§ 1345 and 1355—not § 1330.

Claimants' motion is accordingly DENIED.

F.    <u>Motion 5: Motion by Alavi and 650 for a Stay Pending Appeal</u>

Alavi and 650 Fifth Avenue Co. have moved for stays pending appeal of the judgments soon to be entered in both the Forfeiture Action and TRIA/FSIA Action. (While this application is made prior to entry of judgment, the Court deems it ripe as all parties are aware that this Court intends to enter judgment shortly.) For the reasons set forth below, the Court declines to enter a stay in either case with regard to the Building at 650 Fifth Avenue and its associated bank accounts, but does grant a very limited stay of six months with regard to sale of the properties at which schools currently operate and which are used for religious observance (that is, the Queens, Texas and Maryland properties). The parties are requested to confer on an appropriate form of order reflecting this determination.

Alavi and the 650 Fifth Avenue Co. seek a return to the same status as that which was put in place following this Court's summary judgment decision in the fall of 2013. At that time, a court order provided for the appointment of a monitor of the Building, a prohibition on the sale or disposition of assets and the use of rental income for a limited set of expenditures. Such an order no longer makes sense. That order prevented sale of the Building as well as the other properties—and the current posture of the case now requires that those properties be reviewed

12

independent of one another, and that any stay reflect their different use and statuses.

The standard for issuing a stay pending appeal is well known. This Court must consider: (1) whether the movant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably harmed absent a stay, (3) whether issuance of a stay will substantially injure other parties' interested in the proceeding, and (4) the public interest. Nken v. Holder, 556 U.S. 418, 434 (2009). A stay is not a matter of right, but is a matter concerning the exercise of judicial discretion. Hilton v. Braunskill, 481 U.S. 770, 777 (1987).

There are several reasons why the broad stay Alavi and 650 Fifth Avenue seek would be inappropriate here.

First, 40% of the value of the Building—Assa's interests—was long ago forfeited and subject to turnover under TRIA/FSIA. Assa did not appeal that decision and it is final. The Assa interest is therefore not subject to appeal—and a stay prevents the satisfaction of the judgments. The value of the Assa interest in the Building is significant—worth over a hundred million dollars. In an uncertain local, national and world economic environment, it would be unfair to the ultimate recipients of the funds to subject them to lengthy additional economic risk. Thus, the finality of these cases with regard to the Assa interest is itself sufficient reason to deny the stay as to the Building.

Second, even as to the remaining Alavi and 650 Fifth Avenue Co. interests in the Building and other properties, these cases are now in far different postures than

13

they were in 2013.  Both cases have now been tried, and decisions have been rendered.  That is, there are two separate and entirely dispositive awards which have to be appealed—and both would have to be successful before complete reversal.  The resolution of these cases was largely based on factual findings—and those facts do not support the positions taken by Alavi and 650 Fifth Avenue Co.  This Court views the jury award as amply supported by the evidence and its bench trial decision as similarly supported.  The likelihood that any appeal would succeed in vacating both of them—which is what would be necessary to prevent moving forward with sale of the properties—is remote.  Thus, the first factor that this Court must consider—likelihood of success on the merits—weighs strongly against a stay.

The second factor weighs against a stay for the Building but in favor of a limited, six-month stay with regard to the properties at which current charitable works are presently conducted.  The Building is a financial asset—charitable activities such as a school or place of worship do not occur on its premises.  It will be sold eventually to pay for the judgments in this matter—and there is no *irreparable* harm to any person or entity from proceeding to do so now.  The other properties—those at which charitable works continue to occur—stand in a different position.  As to those, an immediate sale of the properties would cause disruption to individuals who are true third parties to these proceedings.  Providing the charitable organizations time to find alternative arrangements is preferable.  On the other hand, those organizations occupy real estate the value of which is subject to market fluctuations.  The victims of terrorism who stand to benefit from the judgments

entered in these cases would be harmed (and would have no person or entity from whom they could seek recompense) should the value of those properties significantly decline. On balance, a six month stay is a reasonable accommodation to both sets of interests.

Despite Alavi's arguments to the contrary, neither the jury award nor the bench decision require Alavi's charitable works to cease—but it is true that the funding sources for those works, and in some instances the location, must change.

The third factor takes into account the interests of the victims of terrorism who stand to recover from the sale of the assets at issue. As events occur locally, nationally and internationally that impact the economies in which the properties at issue are situated, the value of the properties is at risk. The victims of terrorism have waited literally years to recover what they are owed. During that time, property values have fluctuated significantly. If there is an economic downturn that causes a real decrease in value between the date judgments are entered and the date of sale, the victims have no person or entity to whom they can look to make up the difference. This is not monetary harm that can be addressed with other funds—there are no other funds.

The Court finds that the balance between the second and third factors weighs strongly against a blanket stay; the Court finds that the competing interests are appropriately addressed with a limited six month stay for the Queens, Texas, and Maryland properties at which charitable works are currently ongoing. (Preparation for sale can be made during that time).

15

Finally, the public interest also weighs strongly against a stay. There is a strong public interest in proceeding to liquidate the properties in an orderly manner. The resolution of these actions has taken years, and during those years (as the record clearly showed at trial), additional violations of the law occurred. The efforts at concealing assets did not stop when the lawsuits were filed—they continued with vigor. The victims of terrorism should not have to pay for the concealment and subterfuge any longer. The public has an interest in seeing its laws enforced.

Accordingly, the motions for stays are DENIED except to the limited extent set forth above, namely, to provide a six month period during which the charitable organizations with active operations at certain properties find alternative arrangements.

CONCLUSION

For the reasons set forth above, the Government's motion (motion number 1) is GRANTED in part and Claimants' motions (motions numbers 2-5) are DENIED.

The Clerk of Court is directed to terminate the motions as indicated.

SO ORDERED.

Dated: New York, New York
September 1, 2017

_____
KATHERINE B. FORREST
United States District Judge